**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ERIC D. FREED, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No. 12-cv-_____ |
| PAUL M. WEISS, an individual, | ) | |
| RONALD WEISS, an individual, and | ) | **JURY DEMAND** |
| COMPLEX LITIGATION GROUP, LLC, an Illinois | ) | |
| limited-liability company, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT FOR DISSOLUTION,
DETERMINATION OF FAIR VALUE, AND DAMAGES**

Pursuant to 28 U.S.C. § 1332, Fed. R. Civ. P. 8, the Illinois Limited Liability Company

Act ("LLC Act") and other governing statutes, rules and case law, Plaintiff, Eric D. Freed

("Plaintiff" or "Freed"), by and through his undersigned counsel, hereby asserts his Complaint

for Dissolution, Determination of Fair Value, and Damages ("Complaint") against Paul M.

Weiss ("Weiss"), Ronald Weiss, and Complex Litigation Group, LLC (f/k/a Freed & Weiss

LLC) (the "LLC") (collectively, "Defendants") as follows:

**GENERAL STATEMENT OF THE CASE**

1.      This action seeks relief under the LLC Act, including dissolution of the LLC and

payment of Freed's distributional interest in the LLC.  Dissolution of the LLC is required under

805 ILCS 180/35-1 because of gross misconduct committed by Weiss, who engineered and

implemented a scheme to seize control over the LLC from Freed.  Weiss accomplished this

scheme by shifting funds loaned by Freed to the LLC into unauthorized bank accounts, in the

LLC's name, to which only Weiss had access, allowing him to spend Freed's money, at Weiss's unfettered discretion and for Weiss's personal purposes.

2.      Weiss received help from his father Ronald Weiss, Freed's and the LLC's accountant, who prepared false internal financial records that concealed Weiss's theft of over $2 million of Freed's money.

3.      Weiss then seized control of the LLC outright, excluding Freed from the LLC's operations, and taking all of the LLC's bank accounts and recoveries of attorneys' fees (including judicially approved fees, fees pending judicial approval, and future awards from the LLC's $30 million inventory of lodestar in contingent-fee cases), as though the LLC were Weiss's own.  This theft has deprived Freed of his unconditional 53% interest in the LLC, his absolute right to repayment of his substantial LLC loans, and his ownership of 53% of all distributions by the LLC.

4.      On August 21, 2012, Freed dissociated from the LLC, giving this Court diversity jurisdiction over this case.  Freed respectfully requests that this Court enforce the LLC's mandatory purchase of Freed's distributional interest for fair value under 805 ILCS 180/35-60. Freed has the unconditional right to the fair value of his distributional interest, which the Court should determine pursuant to the formula set forth under 805 ILCS 180/35-65.

5.      After the purchase of Freed's distributional interest under 805 ILCS 180/35-60, or if Weiss and the LLC fail or refuse to purchase Freed's interest for fair value as required by the LLC Act, the Court should enter a decree dissolving the LLC under 805 ILCS 180/35-1(4) and 180/35-1(5), supervising the winding-up of the LLC's business with Freed's participation under 805 ILCS 180/35-4, and distributing the LLC's assets under 805 ILCS 180/35-10.  Dissolution is

necessary because of Weiss's wrongful conduct to Freed and others, and his use of the LLC to accomplish that wrongful conduct, all of which require dissolution of the LLC under 805 ILCS 180/35-1(4) and 180/35-1(5).

6.      In addition, Freed seeks damages against Paul Weiss and Ronald Weiss for their breaches of fiduciary duties to Freed while he was a member of the LLC.  Furthermore, Freed also seeks relief against Paul Weiss and the LLC for breaches of their duties under the parties' Partnership Agreement, a true and correct copy of which is attached hereto as Exhibit A, to the extent such claims are not adjudicated in an arbitration proceeding which Weiss and the LLC previously initiated, and in which Freed filed counterclaims, but which Weiss and the LLC now are seeking to enjoin.

## PARTIES, JURISDICTION AND VENUE

7.      Plaintiff Freed is a resident, citizen and domiciliary of the State of Florida.  Freed is an attorney in good standing and licensed to practice law in the courts of the States of Illinois and California.  Until his express dissociation on August 21, 2012, Freed was a member and a manager of the LLC.

8.      Defendant Weiss is a resident, citizen, and domiciliary of the State of Illinois. Weiss is an attorney licensed to practice law in the State of Illinois.  Weiss's status to practice law in Illinois may be affected by his upcoming disciplinary hearing by the Illinois Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois ("ARDC") for multiple instances of sexual harassment and other misconduct.  Weiss was the other member and manager of the LLC during the course of the events alleged below.  As such, Weiss owed fiduciary duties to Freed.

9.      Defendant Ronald Weiss is a resident, citizen, and domiciliary of the State of Illinois.  Ronald Weiss was Freed's and the LLC's accountant during the course of the events alleged below.  As such, Ronald Weiss owed fiduciary duties to Freed.

10.      The LLC is an Illinois limited-liability company organized under the laws of the State of Illinois in 1999.  The LLC represents plaintiffs in complex class-action lawsuits for which it receives compensation on a contingent-fee basis.  Upon Freed's express dissociation from the LLC on August 21, 2012, Weiss became the sole member and manager of the LLC.  As alleged above, Weiss is a resident, citizen and domiciliary of the State of Illinois.  Accordingly, the LLC is a resident, citizen, and domiciliary of the State of Illinois.

11.      This Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.  There is complete diversity between the parties, and the matter in controversy, exclusive of interest and costs, far exceeds the jurisdictional minimum of $75,000.

12.      This Court has venue over this case pursuant to 28 U.S.C. § 1391(a).  Defendants reside in this District; a substantial part of the events or omissions giving rise to Freed's claims occurred in this District; and Defendants are subject to personal jurisdiction in this District.

**RELEVANT PROCEDURAL BACKGROUND**

13.      On December 5, 2011, Freed filed a complaint in the Circuit Court of Cook County, Chancery Division (the "Chancery Case") seeking interim relief to preserve the status quo and protect his interests and rights in the management of the LLC.

14.      On December 9, 2011, Freed filed a motion for accounting and appointment of a receiver.  The motion made clear that Weiss was systematically looting the LLC by taking its funds and using them for his own personal benefit.

15.     On December 13, 2011, the Circuit Court denied the motion, and refused to appoint a receiver or grant any interim relief to preserve the LLC's funds against Weiss's expenditures for his own personal purposes rather than the LLC's normal and ordinary operations. This allowed Weiss to further pilfer the LLC.

16.     Weiss never filed a responsive pleading to Freed's complaint in the Circuit Court. Instead, Weiss filed "petitions" seeking interim equitable relief. One "petition" sought a judicial declaration that Freed voluntarily terminated from the LLC under the parties' Partnership Agreement. Another "petition" sought to dissociate Freed by judicial expulsion under the Illinois Limited Liability Company Act ("LLC Act"), 805 ILCS 180/35-45(6). In the alternative, if the Court would not expel Freed under the LLC Act, Weiss requested a judicial decree of dissolution under the LLC Act, 805 ILCS 180/35-1(4). Weiss filed his "petitions" to divert attention from Freed's need to be protected from Weiss's misconduct.

17.     Victimized by Weiss's continued pilfering, and denied any interim relief in the Circuit Court, Freed expressly dissociated from the LLC on August 21, 2012. Freed then filed this civil action, over which this Court now had jurisdiction based on diversity of citizenship, as alleged above.

## THE FORMATION AND BUSINESS OF FREED & WEISS LLC

18.     The LLC was organized on December 10, 1999. A true and correct copy of the LLC's Articles of Organization is attached hereto as Exhibit B. On August 7, 2000, Freed and Weiss entered into the Partnership Agreement, Exhibit A attached hereto, which served as the LLC's operating agreement. The LLC, which was initially named Freed Weiss & Flaum LLC, was organized and operated as a manager-managed limited-liability company, with two

managers – Freed and Weiss. (Exhibit B attached hereto, at p. 2.) Before Freed's dissociation on August 21, 2012, and at all times relevant to the allegations below, Freed and Weiss were the only members and managers of the LLC. Freed was the majority member of the LLC, with a 53% interest in the LLC and its profits. (*See e.g.*, Partnership Agreement, Exhibit A attached hereto, at Sections 7, 8.)

19.     From its inception, the LLC has exclusively represented plaintiffs in complex class-action contingent-fee litigation.

20.     Over a period of 10 years, the LLC matured from an unknown entity to a nationally recognized leader in class-action litigation.

21.     Since the LLC's formation in 1999, Freed financed virtually all of the firm's operations through a series of loans that, under the Partnership Agreement, were to be repaid whenever the LLC collected attorneys' fees. From the LLC's inception until his dissociation on August 21, 2012, Freed loaned over $12 million to the LLC for its business operations.

22.     In contrast, Weiss never lent funds to the LLC.

23.     The LLC is currently involved in approximately 75 active cases with a current outstanding balance of $30,000,000 in its inventory of lodestar attorneys' fees. The LLC is lead class counsel, or has been appointed to the executive committee, in at least 10 active cases.

### WEISS FRAUDULENTLY AND IMPROPERLY EXERCISED UNILATERAL CONTROL OVER THE LLC'S FUNDS

24.     Weiss's scheme to hijack the LLC and seize control of its funds dates back to at least 2008, when he began opening a series of concealed bank accounts to which Freed had no access, and fraudulently transferred the LLC's funds into those accounts. Weiss then spent the LLC's funds at his whim for a multitude of personal purposes, including payment of attorneys'

fees for his personal defense against the ARDC's sexual-harassment allegations and to litigate against Freed – with Freed's own money.

25.     Weiss opened an improper account on December 4, 2008, shortly after he learned that the ARDC was charging him with multiple counts of sexual harassment and misconduct as stated herein.   Weiss opened the new account at Chase Bank, account number XXXX4054 ("Chase Account 4054") for the LLC, by falsely representing on a "Business Depository Resolution," that Weiss was the only "member" and "manager" of the LLC.   It is indisputable that, on December 4, 2008, the LLC had two members and managers – Freed and Weiss.

26.     That same date, December 4, 2008, Weiss and his wife executed a "Signature Card" for Account 4054.   On the Signature Card, Weiss and his wife falsely represented that they were authorized to transact business on behalf of the LLC.

27.     Weiss did not inform Freed about this account, which Weiss opened without Freed's knowledge or consent, and Weiss concealed that only he and his wife had signatory authority over the LLC's funds.

28.     On October 28, 2009, Weiss opened another unauthorized LLC account at Chase, XXXX5990 ("Chase account 5990"), and again falsely represented to Chase that Weiss was the only member and manager of the LLC.   It is indisputable that, on October 28, 2009, the LLC had two members and managers – Freed and Weiss.

29.     Also on October 28, 2009, Weiss executed a "Signature Card" which gave Weiss sole signatory authority for Chase Account 5990.   Weiss did not inform Freed about this account, which Weiss opened without Freed's knowledge or consent, and Weiss concealed that only he had signatory authority over the LLC's funds in Chase Account 5990.

30.     On September 10, 2010, Weiss executed a second "Signature Card" for Chase Account 5990, on which Weiss granted his wife signatory authority over Chase Account 5990. On this "Signature Card," Weiss falsely represented that his wife was a member and manager of the LLC.  This was patently false, as Weiss's wife was never been a member or manager of the LLC under the LLC's Articles of Incorporation filed with the Illinois Secretary of State in 1999 (Exhibit B attached hereto) or otherwise.

31.     On December 31, 2009, Weiss opened yet another concealed account in the LLC's name with false statements that provided him with sole authority to transfer and withdraw funds on behalf of the LLC.  Weiss opened this account at Bank of America ("BOA"), at which Freed and Weiss had opened together a legitimate general checking account in 2000 for the LLC – Account XXX8286 ("BOA Account 8286").  Freed and Weiss also later opened a legitimate equity account for the LLC at BOA – Account XXXX8854 ("BOA Account 8854").  Since the LLC already had an official checking account and equity account at BOA, Weiss's obvious purpose for opening this third account, under his sole control, was to help him steal the LLC's funds.

32.     Weiss's new and improper BOA account was called the "Business Interest Maximizer," account no. XXXX0758 ("BOA Account 0758").  Weiss signed documents to open the BOA Account 0758 falsely stating that he had "full authority" to sign for and bind the LLC, and that he was the sole member/manager of the LLC.  It is indisputable that, on December 31, 2009, the LLC had two members/managers – Freed and Weiss.

33.     Weiss's statements to these banks were knowingly false.  On October 15, 2000, when Freed and Weiss opened the LLC's first account – its official checking account – at BOA,

8

Account 8286, Freed and Weiss also executed a "Certificate of Limited Liability Company" ("Certificate of LLC"), which expressly withheld from Weiss any authority to withdraw or transfer funds on behalf of the LLC under two separate agreement sections – wire dispersal and check writing. Furthermore, the "Certificate of LLC" clearly states that Freed's signature is required to add or delete authorized individuals designated to sign checks, drafts, orders, wires, or authorizations on behalf of the LLC. Freed never authorized the addition of Weiss as such an authorized individual. Accordingly, when Weiss opened BOA Account 0758, Weiss falsely represented that he had authority to withdraw and transfer money on behalf of the LLC.

34.     Weiss, with sole control over the improper LLC accounts, then stole the LLC's funds, and prevented Freed from receiving repayments of his loans and payments of his 53% of the LLC's distributions.

35.     Weiss moved the LLC's funds from the legitimate general checking BOA Account 8286 to the improperly opened BOA Account 0758, over which only Weiss – not Freed – had signatory authority and access. When Weiss moved those funds, Weiss had no authority to do so.

36.     With the LLC's funds improperly transferred to the improperly opened BOA 0758 Account, Weiss withdrew and spent those funds at his unfettered discretion. These withdrawals and expenditures were unauthorized by and unknown to Freed, and they constituted misappropriations of Freed's loan repayments and distributions funds to which Freed was (and is) entitled.

37.     Weiss was using the LLC's funds for improper personal expenditures, including payment of Weiss's personal attorneys' fees on his ARDC defense. In connection therewith,

Weiss had forged Freed's signature on a retainer agreement with a law firm that was defending Weiss against one of the many ARDC complaints against Weiss.

38.     Weiss moved a significant amount of the LLC's funds from the improperly opened BOA Account 0758 to the improperly opened Chase Account 4054, which Weiss and his wife had previously opened.  Weiss's transfer removed the LLC's funds from BOA, where the LLC had its legitimate checking and equity accounts, to another bank (Chase) where Freed did not know the LLC had any accounts.

39.     In November 2011, Freed learned that Weiss improperly transferred LLC funds from BOA into the improperly opened Chase Account 4054.  On November 28, 2011, Freed delivered letters demanding that Chase and BOA freeze accounts holding LLC funds.

40.     On December 6, 2011, Weiss wrongfully procured a cashier's check, payable to the order of himself, in the amount of $750,000 from the LLC's account improperly opened at Chase.  Weiss then deposited that check into an account that Weiss improperly opened in the name of the LLC at yet another bank, Northern Trust Corporation ("Northern Trust"), to which Weiss falsely represented that he had authority to withdraw and disburse money on behalf of the LLC.  Like the improperly opened BOA Account 0758 and Chase Account 4054, Weiss opened the Northern Trust account by misrepresenting that he had authority to open bank accounts and engage in withdrawals and transfers on behalf of the LLC, which Weiss clearly did not.

41.     On March 22, 2012, Weiss removed $900,000 from the Northern Trust account and transferred the funds to another account at still another (unknown) bank.  Accordingly, this was the *fourth time in a year* that Weiss transferred Freed's funds to keep Freed from accessing them in violation of Weiss's fiduciary duties to Freed.

10

42.     Shortly thereafter, on March 29, 2012, Weiss withdrew $100,000.00 in cash, an extraordinary amount that served no legitimate business purpose.

43.     During all of these improper monetary transfers, Weiss took funds and deposited them into accounts that he opened and controlled exclusively, without Freed's knowledge, authorization or access, by making a series of patently false representations to each of these financial institutions.

44.     Weiss's improper movements of money between these accounts enabled him to pilfer millions of dollars of LLC funds for improper personal expenditures and prevent required repayments to Freed of his loans and payments of Freed's 53% distributions.

45.     Weiss's improper transfers and misappropriations caused Freed to suffer damages directly, as Freed was precluded from receiving monies to which he was entitled under the clear-and-plain terms of his Partnership Agreement with Weiss.

46.     The Partnership Agreement (Exhibit A attached hereto) provided that, after all loans were repaid pursuant to Section 10, any remaining fees were to be deposited into the LLC's equity account or official checking account.  After the funds were deposited in the LLC account, Freed and Weiss, pursuant to Section 13 of the Partnership Agreement, were permitted to together draw up to 50% of their respective shares (26.5% to Freed and 23.5% to Weiss) of the LLC's profits (moneys available after payment of all expenses, loans and advances).

47.     Those LLC funds not distributed were to remain in the LLC general account, for the operation of the firm for that year, until the end of each fiscal year, December 31, when the year's unused funds, pursuant to Section 14 of the Partnership Agreement, were to be distributed according to the members' respective profit interests (53% to Freed, 47% to Weiss).  Weiss,

11

however, could not take any distributions under Sections 13 or 14 so long there were loans outstanding to the LLC (under Section 10 of the Partnership Agreement) or to him (under Section 12(5) of the Partnership Agreement).

48.      Weiss's misconduct, therefore, caused the misappropriation of Freed's money, not just the LLC's funds.  By stealing the money and distributing it to himself, Weiss directly and tortiously deprived Freed of loan repayments to which Freed was entitled, and took Freed's 53% interest in the LLC's profits.

## WEISS CONCEALED THIS THEFT WITH THE HELP OF HIS FATHER, RONALD WEISS, FREED'S AND THE LLC'S ACCOUNTANT

49.      In 2011, Freed learned that, for many years, Weiss received the help of his father Ronald Weiss, the LLC's accountant, to create false accounting records that concealed Weiss's theft from Freed.  Despite Freed's multiple requests to view or secure copies of those records, Ronald Weiss refused to share these materials with Freed.  When Freed requested information about the LLC's finances, Ronald Weiss and Weiss produced partial and incomplete accounting documentation in which Weiss's withdrawals, expenses and other transactions were undocumented and/or hidden.

50.      Ronald Weiss concealed Weiss's theft in four independent respects, all of which sought to conceal Weiss's improper expenditures and shift the financial burdens thereof to Freed. First, Ronald Weiss mischaracterized Freed's loans to the LLC as purported capital contributions by Weiss.  Second, Ronald Weiss transferred hundreds of thousands of dollars from Freed's capital account into Weiss's capital accounts.  Third, Ronald Weiss understated Weiss's draws by at least $1 million.  Fourth, Ronald Weiss misclassified hundreds of thousands of dollars of Weiss's personal expenses as purported LLC business expenses.

51.     In late 2011, Ronald Weiss tried to conceal the misclassified personal expenses (which were falsely designated as legitimate LLC expenses) by reclassifying them as a $535,000 draw from Weiss's capital account.  That improper reclassification gave Weiss a negative capital-account balance of $664,103.  This amount did not (and does not) include additional LLC funds improperly spent by Weiss for other personal purchases.

52.     Weiss never intended to – and never did – pay any amount of his capital-account balance, not even the far-understated negative balance in Ronald Weiss's records.

53.     In late 2008, Ronald Weiss falsely reported an appreciable positive gain in Weiss's capital account.  Yet that year, the LLC suffered a $773,000 loss and Freed lent the LLC over $1.8 million.  In Ronald Weiss's records, however, Weiss's capital account *increased* by $1.14 million, despite the absence of any loans by Weiss to the LLC that (or any other) year.  This is just one of many examples of the falsities employed by Ronald Weiss to hide Weiss's theft.  Ronald Weiss and Weiss refused to share any of these false internal financial records with Freed, and to this day, still refuse.  Freed never received full repayment of amounts that he lent the LLC from its inception through 2011.  Freed's capital account was always positive, even in Ronald Weiss's false financial records.  Freed, therefore, never withdrew – voluntarily or otherwise – any of his services to the LLC, including its funding services, which he supplied exclusively over the life of the LLC until Weiss froze him out, as set forth below.

54.     To further conceal the theft, Weiss and his father misled Freed with the LLC's tax filings.  For example, in 2011, Freed discovered that Weiss and his father filed a false tax form stating that Weiss had a negative capital account balance of $130,000 in 2010 when, in fact, that number was listed as negative $664,103 on Ronald Weiss's internal records.  Thus, in 2010,

Weiss and Ronald Weiss misled Freed and the federal government, on the LLC tax form, that Weiss's negative account balance was only $130,000.

55.     Freed did not uncover Weiss's false and grossly understated negative account balances under late 2011.  Freed's attempts to uncover Weiss's theft were thwarted by Ronald Weiss, who refused to provide access to the books and records of the LLC, or to his internal documents.

## WEISS ENGAGED IN NUMEROUS OTHER IMPROPRIETIES IN ORDER TO SEIZE CONTROL OVER THE LLC AND FREED'S MONEY

56.     On December 14, 2011, Weiss changed the locks to the LLC's offices so that Freed could not enter, despite the fact that Freed was a member and manager of the LLC and the only signatory on the lease for that office space.

57.     On December 20, 2011, Weiss changed the passwords to lock Freed out of the LLC's computer system, thereby preventing Freed from accessing his files, client records, emails, or any of the LLC's electronic documents.

58.     On December 22, 2011, Weiss changed the LLC's name.  He filed Articles of Amendment ("Articles") changing the LLC's name from Freed & Weiss LLC to CLG, falsely declaring (under oath) that he was authorized to do so, and falsely identifying himself as the LLC's sole owner/manager.

59.     In 2012, Weiss changed the LLC's website and domain name to make it appear as though the LLC was a new firm, disconnected from, and unassociated with, Freed.

60.     On December 10, 2010, Weiss forged Freed's name on a $500,000 office lease. Then, on March 31, 2011, Weiss refused to pay rent on the property, causing Freed to suffer additional damages.

61.     Weiss then unilaterally moved the LLC from its historic location in downtown Chicago to suburban Highland Park, close to Weiss's home.  Weiss searched for new office space on behalf of a fictitious company called "F & W, L.L.C.," even though there is an entity by that name based in Galesburg, Illinois, which has no relation to Freed or Weiss.  On or around October 17, 2011, Weiss and his wife, Jamie Saltzman Weiss ("Saltzman"), signed a three-year lease for space located at 513 Central Avenue, Suite 300, Highland Park, Illinois, as the "manager" of "F & W, L.L.C.," an entity in which Weiss had no ownership interest and had nothing whatsoever to do with Freed & Weiss LLC.  The Highland Park Lease stated that "F & W, L.L.C." had an address at "c/o Paul and Jamie Weiss, 1144 Oakley Ave., Deerfield, Illinois 60015," the residence of Weiss and Saltzman.  To secure the lease, Weiss and Saltzman made a prepayment to Imperial Realty by transferring $100,000 of the LLC's funds without the permission or prior knowledge of Freed.  Weiss, without the consent or authorization of Freed, wrongfully moved the computer servers, furniture, other equipment, case files, case documents and business documents belonging to the LLC to the Highland Park location.

### WEISS CONCOCTED A "VOLUNTARY TERMINATION" PRETEXT TO FREEZE FREED OUT OF THE LLC

62.     Pursuant to Section 10 of the Partnership Agreement, on March 22, 2011, Freed received $1.5 million as partial repayment of the $1.7 million he had lent the LLC in 2010.  The LLC owed Freed additional amounts for outstanding prior loans.  After the $1.5 million partial repayment against the $1.7 million lent by Freed in 2010, $600,000 remained for the LLC's operations.  At Weiss's request, Freed lent an additional $300,000 to the LLC the next day, March 23, 2011, giving the LLC $900,000 for its operations.

63.     The LLC also had fee awards of $1 million due for collections, thereby providing the LLC with nearly $2 million for its operations in 2011.

64.     Almost a month later, on April 15, 2011, Weiss seized on the LLC's partial loan repayment to Freed as a pretext to justify his takeover of the LLC and steal Freed's funds, arguing that Freed's partial repayment constituted a "voluntary termination" under Section 19 of the Partnership Agreement.

65.     Weiss's concocted "voluntary termination" contention was a mere pretext offered in a veiled attempt to legitimize his wrongful conduct, secure control over the LLC, and prevent Freed from receiving monies to which he was entitled, including loan repayments and distributions owed by the LLC to Freed.

66.     The plain language of the Partnership Agreement clearly contradicted and defeated Weiss's contention that there was any "voluntary termination" by Freed, in that Section 19 defines "voluntary termination" as "any act(s) or omissions(s) which deliberately withholds the services of" Freed from the LLC, which never occurred.  In addition, Weiss and the LLC acted in a manner conclusively proving that there was no "voluntary termination" by Freed, including, *inter alia,* indisputable facts that, long after the purported "voluntary termination:" (a) there were ongoing communications by and between Weiss and Freed regarding the operation of the LLC; (b) the LLC continued to hold out Freed as a member; and (c) the LLC filed cases identifying Freed as an attorney of record.

**WEISS HAS ENGAGED IN MULTIPLE INSTANCES OF SEXUAL MISCONDUCT AND HARASSMENT, WHICH ARE UNDER INVESTIGATION BY THE ARDC**

67.     On or about December 4, 2008, the ARDC filed a Fourth Amended Complaint against Weiss for unethical and criminal conduct he engaged in while associated with the LLC.

16

In 1997, Weiss was suspended from the practice of law for 30 days and was put on probation for a two-year period by the Illinois Supreme Court.

68.     The 2008 ARDC Fourth Amended Complaint, which is set for an ARDC disciplinary hearing in late 2012, alleges that Weiss assaulted, battered, unlawfully restrained, and/or harassed five female Freed & Weiss LLC employees (two of whom were 18 and 19 years of age, respectively, at the time).  The 2008 ARDC complaint also alleges two counts of public indecency and disorderly conduct, acts that resulted in Weiss being evicted from his apartment and arrested by the Deerfield police.

69.     The ARDC is investigating the sexual harassment allegations in the 2008 ARDC Complaint and in other filings submitted to the ARDC.  In addition, those allegations are scheduled to be adjudicated in December 2012.

70.     Weiss has misappropriated Freed's and the LLC's funds to pay attorneys' fees in the hundreds of thousands of dollars that Weiss has incurred personally to defend against the sexual-harassment and misconduct charges against him.

**COUNT I**
**(AGAINST THE LLC)**
**ENFORCEMENT OF PURCHASE OF FREED'S DISTRIBUTIONAL INTEREST**
**UNDER THE LLC ACT**

71.     Freed re-alleges the averments set forth in Paragraphs 1 to 70 above as though fully set forth herein.

72.     The LLC Act entitles a dissociated member, like Freed, to commence a proceeding against the LLC to enforce the purchase of Freed's distributional interest.  (805 ILCS 180/60(d).)

73.     The LLC's purchase of Freed's distributional interest is mandatory under the LLC Act.  (805 ILCS 180/35-55.)

74.     Freed has the right to his "distributional interest" – 53% under the Partnership Agreement – of the LLC's "fair value determined as of the date of the member's dissociation," or August 21, 2012.  (805 ILCS 180/35-60.)

75.     This Court should order this purchase to proceed forthwith, without awaiting the formality of a 120-day delay from the date of dissociation (805 ILCS 180/35-60(d)).  Such a procedural requirement would be futile in this case, given Weiss's persistent failures and refusals to abide by his duties under the LLC Act and common law.  Alternatively, if the Court should require the parties to await the procedural formality of the 120-day delay, Freed respectfully requests that this Court supervise the process and enter an order retaining jurisdiction of the purchase in the event that the parties are unable to reach agreement of the purchase within 120 days of August 21, 2012, the date of Freed's dissociation.  (805 ILCS 180/35-60(d).)

76.     WHEREFORE, based on the above allegations, Freed respectfully seeks an order enforcing the purchase of Freed's distributional interest by the LLC based on 53% of the LLC's fair value, and such other relief as the Court deems reasonable.

**COUNT II**
**(AGAINST THE LLC)**
**DISSOLUTION OF THE LLC UNDER THE LLC ACT**

77.     Freed re-alleges the averments set forth in Paragraphs 1 to 76 above as though fully set forth herein.

78.     The LLC Act entitles a dissociated member, like Freed, to apply for dissolution through judicial decree that "the managers or members in control of the company have acted, are

acting, or will act in a manner that is illegal, oppressive, or fraudulent with respect to the petitioner." (805 ILCS 180/35-1(4)(E).) As alleged above, Weiss has acted in a manner that is illegal, oppressive, or fraudulent with respect to the petitioner Freed.

79. In addition, the LLC Act also entitles a dissociated member, like Freed, to apply for dissolution through "judicial determination that it is equitable to wind up the company's business." (805 ILCS 180/35-1(5).) As alleged above, Weiss has engaged in numerous instances of misconduct, against Freed and others, thereby requiring a determination that it is equitable to wind up the LLC's business.

80. Alternatively, if the LLC fails or refuses to make Freed a fair distributional offer or otherwise fails to properly purchase Freed's distributional interest as required by the LLC Act, Freed respectfully requests that the Court retain jurisdiction to enter an order of dissolution because of such failure or refusal. (805 ILCS 180/35-1(4)(D); 180/35-65(c).)

81. Based on any or all of those bases for dissolution under the LLC Act, the Court should enter an order of dissolution of the LLC, and require that Weiss, with Freed's involvement, wind up the LLC's business and distribute the LLC's assets in accordance with 805 ILCS 180/35-4 and 805 ILCS 180/35-10, including without limitation the application of the LLC's assets to pay amounts owed to Freed, a return of all of Freed's contributions that were not previously returned, payment of all distributions owed by the LLC to Freed, and payment to Freed of his unconditional 53% right to any and all attorneys' fees that are recovered from the LLC's over $30 million inventory of lodestar in class-action cases pending as of Freed's dissociation on August 21, 2012. (*Id.*)

19

82.     WHEREFORE, based on the above allegations, Freed respectfully seeks an order of dissolution against the LLC, payment of all amounts owed by the LLC to Freed during the winding up of the LLC's business, and such other relief as the Court deems reasonable.

**COUNT III**
**BREACHES OF FIDUCIARY DUTIES BY WEISS**
**(IF THE ARBITRATION OF THIS COUNT DOES NOT PROCEED IN AAA)**

83.     Freed re-alleges the averments set forth in Paragraphs 1 to 70 above as though fully set forth herein.

84.     Because of his status as a member of the LLC, Weiss owed fiduciary duties to Freed.

85.     The LLC Act provides that Weiss, as a member and manager in a manager-managed LLC, owed fiduciary duties of loyalty to Freed.  (805 ILCS 180/15-3(a), (g)(2).)

86.     Weiss breached his fiduciary duties to Freed, including the duty of loyalty, by, *inter alia*:

        (a)     misappropriating the LLC's funds;

        (b)     stealing the LLC's bank accounts with false statements;

        (c)     wrongfully excluding Freed from the premises, computer system and bank accounts of the LLC;

        (d)     disparaging Freed to employees of the LLC;

        (e)     converting the assets of the LLC to pay for Weiss's personal entertainment, residence, bills, and Weiss's legal defense against claims of sexual misconduct filed with the ARDC;

        (f)     forging Freed's name on the lease extension at 111 West Washington Street and breaching that lease;

        (g)     forging Freed's name on an retainer agreement to defend himself against allegations of sexual harassment;

20

(h)       stealing the assets of the LLC to pay for office space at 513 Central Avenue, Highland Park, Illinois, in the name of a fictitious corporation;

(i)       forcing Freed out of his position as manager and member of the LLC with no legal justification;

(j)       excluding Freed from participating in decision-making and the LLC's operations;

(k)       engaging in sexual misconduct that has sullied the name and reputation of Freed & Weiss LLC;

(l)       withdrawing 100% of the profits of Freed & Weiss LLC; and

(m)       wrongfully moving the LLC's computer system, office equipment, furniture, case files and business to Highland Park.

87.    These breaches of Weiss's fiduciary duties have caused harm and damages to Freed.

88.    Freed has asserted breach-of-fiduciary-duty claims against Weiss in an arbitration proceeding previously initiated by Weiss, AAA No. 51 194 Y 01499 11.  Weiss, however, now seeks to preliminarily enjoin that proceeding.  In the event that Weiss succeeds in enjoining that proceeding, Freed respectfully requests that this Court adjudicate Freed's breach-of-fiduciary-duty claims against Weiss.

WHEREFORE, based on the above allegations, in the event that these claims are not arbitrated, Freed respectfully seeks compensatory damages against Weiss in the tens of millions of dollars, punitive damages, attorneys' fees, costs and such other relief as the Court deems just and appropriate.

## COUNT IV
## BREACHES OF THE PARTNERSHIP AGREEMENT BY WEISS
## (IF ARBITRATION OF THIS COUNT DOES NOT PROCEED IN AAA)

89.    Freed re-alleges the averments set forth in Paragraphs 1 to 70 above as though fully set forth herein.

90.    Section 10 of the Partnership Agreement (attached hereto as Exhibit A) provides, in relevant part, "Any fee received…in a case…shall be used first…to repay…Freed" amounts loaned.  The Agreement, therefore, requires full repayment of all of Freed's loans to the LLC, and such repayment comes from the first dollars of any fees paid to the LLC.  Even if Weiss had the right to any distributions (which he did not), the Agreement precludes any such distributions unless and until Freed is fully reimbursed for all of his LLC loans, which are to be used strictly for the LLC's normal and ordinary operations, not to pay the members' personal legal bills.

91.    In addition to priority repayment of loans, Freed has an unconditional right to 53% of the LLC's profits.  Freed's unconditional right to 53% of the LLC's profits is explicit under Section 7 of the Partnership Agreement, which states that "[a]ll gross revenues received by Freed & Weiss LLC less expenses repaid are to be split (the profits), fifty three percent (53%) to [Freed] and forty seven percent (47%) to [Weiss]."

92.    After all loans are repaid pursuant to Section 10, any remaining fees are deposited into the LLC's equity account or official banking account pursuant to Section 11 of the Partnership Agreement.  Thereafter, pursuant to Section 13, partners may together draw up to 50% of their respective shares of the profits.  Section 14 makes clear that all other funds remain for the operation of the firm until the end of each year, December 31, when they are distributed

according to the members' respective profit interests for said fiscal year. Weiss cannot take a distribution under Sections 13 or 14 so long there are loans outstanding under Section 12(5).

93.     Through misappropriations of the LLC's assets, and theft of the LLC's funds, Weiss has breached the Partnership Agreement by, *inter alia*:

  (a)     taking LLC monies to which Weiss is not entitled;

  (b)     preventing the LLC from repaying loans by Freed to the LLC; and

  (c)     dissipating the LLC's operating funds.

94.     Freed has asserted claims against Weiss for breaches of the Partnership Agreement in the arbitration proceeding previously initiated by Weiss, AAA No. 51 194 Y 01499 11. Weiss, however, now seeks to preliminarily enjoin that proceeding. In the event that Weiss succeeds in enjoining that proceeding, Freed respectfully requests this Court to adjudicate Freed's breach-of-contract claims against Weiss.

95.     WHEREFORE, based on the above allegations, in the event that these claims are not arbitrated, Freed respectfully seeks compensatory damages against Weiss in the tens of millions of dollars, punitive damages, attorneys' fees, costs and such other relief as the Court deems just and appropriate.

### COUNT V
### BREACHES OF THE PARTNERSHIP AGREEMENT BY THE LLC
### (IF ARBITRATION OF THIS COUNT DOES NOT PROCEED IN AAA)

96.     Freed re-alleges the averments set forth in Paragraphs 1 to 70 above as though fully set forth herein.

97.     Section 10 of the Partnership Agreement (attached hereto as Exhibit A) provides, in relevant part, "Any fee received…in a case…shall be used first…to repay…Freed" amounts

loaned. The Agreement, therefore, requires full repayment of all of Freed's loans to the LLC, and such repayment comes from the first dollars of any fees paid to the LLC. Even if Weiss had the right to any distributions (which he did not), the Agreement precludes any such distributions unless and until Freed is fully reimbursed for all of his LLC loans, which are to be used strictly for the LLC's normal and ordinary operations, not to pay the members' personal legal bills.

98.     In addition to priority repayment of loans, Freed has an unconditional right to 53% of the LLC's profits. Freed's unconditional right to 53% of the LLC's profits is explicit under Section 7 of the Partnership Agreement, which states that "[a]ll gross revenues received by Freed & Weiss LLC less expenses repaid are to be split (the profits), fifty three percent (53%) to [Freed] and forty seven percent (47%) to [Weiss]."

99.     After all loans are repaid pursuant to Section 10, any remaining fees are deposited into the LLC's equity account or official banking account pursuant to Section 11 of the Partnership Agreement. Thereafter, pursuant to Section 13, partners may together draw up to 50% of their respective shares of the profits. Section 14 makes clear that all other funds remain for the operation of the firm until the end of each year, December 31, when they are distributed according to the members' respective profit interests for said fiscal year. Weiss cannot take a distribution under Sections 13 or 14 so long there are loans outstanding under Section 12(5).

100.    The LLC has breached the Partnership Agreement by, *inter alia*:

(a)     paying unauthorized and wrongful distributions to Weiss;

(b)     failing to pay required distributions to Freed;

(c)     failing to repay loans made by Freed to the LLC;

(d)     failing to pay Freed his 53% interest in the LLC's profits; and

(e)      failing and repudiating the LLC's duties to pay Freed 53% of all profits from past, pending and future attorneys' fees collected from the LLC's current lodestar inventory valued at over $30 million.

101.    Freed has the right to assert claims against the LLC for its breaches of the Partnership Agreement in the arbitration proceeding previously initiated by the LLC and Weiss, AAA No. 51 194 Y 01499 11. The LLC, however, now seeks to preliminarily enjoin that proceeding. In the event that the LLC succeeds in enjoining that proceeding, Freed respectfully requests this Court to adjudicate Freed's breach-of-contract claims against the LLC.

102.    WHEREFORE, based on the above allegations, in the event that these claims are not arbitrated, Freed respectfully seeks compensatory damages against the LLC in the tens of millions of dollars, punitive damages, attorneys' fees, costs and such other relief as the Court deems just and appropriate.

### COUNT VI
### BREACHES OF FIDUCIARY DUTIES BY RONALD WEISS

103.    Freed re-alleges the averments set forth in Paragraphs 1 to 70 above as though fully set forth herein.

104.    As Freed's accountant, and/or as the LLC's account, Ronald Weiss owed fiduciary duties to Freed.

105.    Ronald Weiss breached his fiduciary duties to Freed.

106.    These breaches of Ronald Weiss's fiduciary duties have caused harm and damages to Freed.

107.    WHEREFORE, based on the above allegations, Freed respectfully seeks compensatory damages against Ronald Weiss in the tens of millions of dollars, punitive damages, attorneys' fees, costs and such other relief as the Court deems just and appropriate.

### JURY DEMAND

108.    Freed hereby demands a jury trial for all of the counts triable by a jury in this Complaint.


Dated:  August 21, 2012                          Respectfully submitted,

                                                 **ERIC D. FREED,**
                                                 Plaintiff


                                                 By: /s/ George J. Spathis
                                                     One of His Attorneys

George J. Spathis, Esq. (ARDC No. 6204509)
Stavros S. Giannoulias (ARDC No. 6277531)
Horwood Marcus & Berk Chtd.
500 West Madison, Suite 3700
Chicago, Illinois 60661
Phone: (312) 606-3249
Fax: (312) 267-2250
Email:  gspathis@hmblaw.com