UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC D. FREED, | ) | |
| | ) | |
| Plaintiff, | ) | 12 C 6720 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| PAUL M. WEISS, RONALD WEISS, and COMPLEX LITIGATION GROUP LLC, an Illinois limited liability company, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————————— | ) | ——————————— |
| | ) | |
| ERIC D. FREED, | ) | |
| | ) | |
| Plaintiff, | ) | 12 C 1477 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| JPMORGAN CHASE BANK, N.A., | ) | |
| | ) | |
| Defendant/Third-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| COMPLEX LITIGATION GROUP LLC, PAUL M. WEISS, and JAMIE E. WEISS, | ) ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Eric D. Freed brought Case 12 C 1477 against JPMorgan Chase Bank, N.A., in the

Circuit Court of Cook County, Illinois. Doc. 1-1 (12 C 1477). Chase removed the case, which

includes only state law claims but which falls within the federal diversity jurisdiction, to this

court. Doc. 1 (12 C 1477). The court dismissed Freed's first amended complaint. Doc. 34 (12 C

1477); *Freed v. JPMorgan Chase Bank, N.A.*, 2012 WL 3307091 (N.D. Ill. Aug. 13, 2012).

Freed then filed a second amended complaint, Doc. 42 (12 C 1477), Chase again moved to

dismiss, and the court denied the motion, Doc. 66 (12 C 1477); *Freed v. JPMorgan Chase Bank,*

*N.A.*, 2012 WL 6193964 (N.D. Ill. Dec. 12, 2012). Chase answered and brought third-party

claims against Complex Litigation Group LLC ("the LLC"), Paul M. Weiss ("Weiss"), and

Weiss's wife, Jamie Saltzman Weiss ("Saltzman"). Doc. 75 (12 C 1477).

     Freed brought Case 12 C 6720 in federal court against Weiss, the LLC, and Weiss's

father, Ronald Weiss ("Ronald Weiss"). Doc. 1 (12 C 6720). Case 12 C 6720, like Case 12 C

1477, brings only state law claims and falls within the court's diversity jurisdiction. Case 12 C

6720 was reassigned to the undersigned judge's calendar pursuant to Local Rule 40.4 because it

is "related" to Case 12 C 1477. Docs. 15, 16 (12 C 6720). There have been no substantive

rulings in Case 12 C 6720.

     For ease of exposition, this opinion will refer to all parties other than Freed collectively

as "Defendants." Defendants in both cases have moved the court to abstain under the doctrine

set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976),

pending the resolution of an earlier-filed suit in Illinois state court, *Freed v. Weiss*, 2011 CH

41529 (Cir. Ct. Cook Cnty., Ill. filed Dec. 5, 2011). Docs. 71, 79 (12 C 1477); Doc. 23 (12 C

6720). In the state court suit, Freed sued Weiss and Saltzman, Doc. 27-4 (12 C 6720), and Weiss

and the LLC filed counterclaims against Freed, which they styled as "Emergency Petitions,"

Docs. 83-5, 83-6 (12 C 1477). After Defendants filed their abstention motions in this court, the

state court granted Freed's motion to dismiss his state court claims. Doc. 86 (12 C 1477); Doc.

32 (12 C 6720). Because Weiss and the LLC had filed counterclaims, the state court's dismissal

of Freed's claims did not end the state court case, and so this court requested supplemental

briefing on whether the state court counterclaims justified federal abstention even with Freed's

state court claims out of the picture.  Doc. 90 (12 C 1477); Doc. 35 (12 C 6720).  The parties

adhered to their initial positions.  Docs. 91, 92, 96, 98 (12 C 1477); Docs. 41, 42-1 (12 C 6720).

For the following reasons, the abstention motions are granted and the two federal cases

are stayed pending the outcome of the state court lawsuit.

## Discussion

The *Colorado River* doctrine provides that "a federal court may stay or dismiss a suit in

exceptional circumstances when there is a concurrent state proceeding and the stay or dismissal

would promote 'wise judicial administration.'"  *Caminiti & Iatarola, Ltd. v. Behnke*

*Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992) (quoting *Colorado River*, 424 U.S. at 818).

The Supreme Court "has cautioned that abstention is appropriate only in 'exceptional

circumstances,' and has also emphasized that federal courts have a 'virtually unflagging

obligation … to exercise the jurisdiction given them.'"  *AXA Corporate Solutions v.*

*Underwriters Reins. Corp.*, 347 F.3d 272, 278 (7th Cir. 2003) (quoting *Colorado River*, 424 U.S.

at 813, 817).  In determining whether to abstain, the court's task is "not to find some substantial

reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain

whether there exist exceptional circumstances, the clearest of justifications, that can suffice

under *Colorado River* to justify the *surrender* of that jurisdiction."  *Moses H. Cone Mem'l Hosp.*

*v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983) (internal quotation marks omitted).

The *Colorado River* analysis has two steps.  First, the court "inquire[s] whether the

concurrent state and federal proceedings are parallel."  *Caminiti*, 962 F.2d at 700.  If the

proceedings are parallel, the court then weighs ten non-exclusive factors to determine whether

abstention is proper.  *Id*. at 701.

I. **Whether the Federal and State Cases Are Parallel**

The parallelism analysis requires a description of the factual allegations and legal claims in the federal cases and the state court case. The court will begin with Case 12 C 6720 because the discussion of that case provides necessary background for the discussion of Case 12 C 1477. Unless otherwise noted, citations to docket entries in the following subsections are to the docket for the case discussed in that subsection.

A. **Case 12 C 6720:** *Freed v. Weiss*

In Case 12 C 6720, Freed alleges that he was a member of the LLC along with Weiss but that he voluntarily dissociated from the LLC on August 21, 2012. Doc. 1 at ¶¶ 1, 3-4. The six-count complaint seeks (1) to force the LLC to purchase Freed's distributional interest in the LLC and (2) to dissolve the LLC, and it claims (3) that Weiss breached fiduciary duties owed to Freed as a member and manager of the LLC, (4) that Weiss breached the Partnership Agreement that Freed and Weiss executed when they formed the LLC, (5) that the LLC itself breached the Partnership Agreement, and (6) that Ronald Weiss breached fiduciary duties owed to Freed as Freed's or the LLC's accountant. *Id*. at pp. 17-26.

The federal suit centers on a scheme allegedly concocted and executed by Weiss, assisted by Saltzman and Ronald Weiss, to push Freed out of the LLC and to take its assets. *Id*. at ¶¶ 1-3, 49-55. Freed alleges that Weiss carried out this scheme by fraudulently transferring the LLC's funds into bank accounts at Chase that were controlled by Weiss, and also by excluding Freed from control of the LLC by asserting that Freed had withdrawn LLC funds in violation of the Partnership Agreement in March 2011 and had thereby voluntarily disassociated himself from the LLC and given up his right to participate in its control. *Id*. at ¶¶ 1, 3, 24-48, 56-66.

These factual allegations ground Freed's claims in federal court for dissolution of the LLC, Doc. 1 at ¶¶ 78-79; for breach of fiduciary duty by Weiss, *id*. at ¶¶ 84-87; for breach of the Partnership Agreement by Weiss, *id*. at ¶¶ 90, 93; and for breach of the Partnership Agreement by the LLC, *id*. at ¶ 100. The allegations are also pertinent to Freed's claim to require the LLC to purchase his distributional interest, *id*. at ¶¶ 71-76, because the relevant value of his interest turns on whether he dissociated in March 2011, as claimed by Weiss, *id*. at ¶¶ 62-66, or in August 2012, as claimed by Freed, *id*. at ¶ 74 ("Freed has the right to his 'distributional interest'—53% under the Partnership Agreement—of the LLC's 'fair value determined *as of the date of the member's dissociation*,' or August 21, 2012.") (quoting 805 ILCS 180/35-60) (emphasis added).

Freed brought the state court case on behalf of himself and derivatively on behalf of the LLC (then called "Freed & Weiss LLC"—the same entity now called Complex Litigation Group LLC) against Weiss and Saltzman. Doc. 27-4. Freed's factual allegations in the state court case largely overlap with those in Case 12 C 6720. As mentioned above, Freed has dismissed his state court claims, and so the question becomes whether abstention is appropriate in light of the counterclaims filed by Weiss and the LLC, which is now under Weiss's control.

The counterclaims allege that Freed had dissociated from the LLC in March 2011; allege further that Freed's misconduct after March 2011 should result in his being expelled from the LLC under the Illinois Limited Liability Company Act, 805 ILCS 180/1-1 *et seq*., if he had not in fact already dissociated in March 2011; ask the court to enjoin Freed from representing himself to third parties as a member or manager of the LLC; and, in the alternative to a declaration that Freed is disassociated from the LLC, seek a judicial determination that the LLC is dissolved. Docs. 83-5, 83-6 (12 C 1477). On March 4, 2013, after the abstention motions

were filed and after the state court dismissed Freed's claims, Weiss and the LLC filed a

"Renewed Motion to Set the Trial" in state court. Doc. 41-1. The motion notes that the

counterclaims had been pending for over a year and that an evidentiary hearing on the

counterclaims had been continued on several occasions. *Id*. at 1-4. The motion requests, among

other things, the following relief:

> 1.  A declaration that Freed was dissociated from CLG by at least March
>     20, 2011 because Freed voluntarily terminated his membership interest
>     in CLG pursuant to the Partnership Agreement by that date because
>     Freed had deliberately withheld all of his services from CLG and Freed
>     had been fully paid all amounts due to him under the Partnership
>     Agreement.
>
> *        *        *
>
> 5.  Monetary relief against Freed for his unlawful conduct directed toward
>     CLG and the Weisses.
>
> 6.  A judicial determination that CLG is dissolved and a distribution of its
>     assets.

*Id*. at 9-10.

Freed contends that this court should not even consider the renewed motion to set trial in

evaluating whether abstention is appropriate, reasoning: "The motion for 'Immediate Trial' on

phantom, never-before-pled claims, is obviously a last-ditch effort by Defendants to *create* an

appearance of 'parallelism' that is plainly absent. This is precisely the type of bad-faith conduct

that the Seventh Circuit held would warrant summary denial of an abstention motion. See *Day v.

Union Mines Inc.*, 862 F.2d 652, 658 (7th Cir. 1988)." Doc. 45 at 3. In fact, *Day* recognizes that

the precise claims advanced in a state case can evolve over time and that sound judicial

administration requires the federal court to look to whether the suits are parallel as of the time it

rules on the abstention motion, not to whether they were parallel at some earlier date. *See Day*,

862 F.2d at 658 ("a stay should be upheld in the interests of judicial economy if the concurrent

suits are parallel at the time of review, as they are here, even if they were not parallel when the stay was entered"). True, as Freed observes, *Day* also says that "if there is evidence of bad faith on the part of the party attempting to stay out of federal court, a district court or a reviewing court can deny a party's motion to stay the federal proceedings." *Ibid*. But there is no evidence of "bad faith" by Weiss, who merely is seeking to have the state court, the forum in which Freed initially sued him, resolve Freed's and Weiss's disputes about the LLC. Contrary to Freed's submission, there is not much (if any) daylight between the counterclaims as pleaded and the motion to set the trial, and any such daylight reflects the modest evolution of state court claims that *Day* recognizes can occur. It therefore is appropriate to consider whether abstention is warranted in light of Weiss's and the LLC's motion to set the trial, which is nothing more, nothing less, than a motion intended to advance the counterclaims to judgment.

State and federal proceedings need not be identical to be parallel. *See Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988) ("Interstate is correct in its assertion that differences exist. However, the requirement is of parallel suits, not identical suits."). Proceedings are parallel for *Colorado River* purposes "when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Tyrer v. City of S. Beloit*, 456 F.3d 744, 752 (7th Cir. 2006) (internal quotation marks omitted). Put another way, "[t]he question is not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the [state court] litigation will dispose of all claims presented in the federal case." *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) (internal quotation marks omitted). "[A]ny doubt regarding the parallel nature of the [state court] suit should be resolved in favor of exercising jurisdiction." *Id*. at 520.

Here, although the state and federal cases do not involve identical parties, they do involve "substantially the same parties." *Tyrer*, 456 F.3d at 752. In both suits, Freed sued Weiss and an alleged accomplice (Ronald Weiss in the federal suit, and Saltzman in the state suit), and in both suits the LLC is aligned with Weiss, as a defendant in the federal suit and as a counter-plaintiff in the state suit. Ronald Weiss is a defendant only in the federal suit. But Freed's claim against Ronald Weiss is derivative of his claim against Weiss, in that Freed claims that Ronald Weiss breached duties owed to Freed when Weiss "received the help of his father Ronald Weiss, the LLC's accountant, to create false accounting records that concealed Weiss's theft from Freed." Doc. 1 at ¶ 49. If Weiss is not liable for any "theft" or other misconduct, then Ronald Weiss could hardly be liable for having helped Weiss to cover up that alleged misconduct.

Settled law holds that state and federal suits are not rendered non-parallel by the inclusion in one suit of a party not present in the other. *See AAR Int'l, Inc.*, 250 F.3d at 518 ("the mere presence of additional parties … in one of the cases will not necessarily preclude a finding that they are parallel"); *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 695 (7th Cir. 1985). "If the rule were otherwise, the *Colorado River* doctrine could be entirely avoided by the simple expedient of naming additional parties. … [I]ts impact cannot be obliterated by the stroke of a pen." *Lumen Constr., Inc.*, 780 F.2d at 695; *see also Pieleanu v. Mortg. Elec. Registration Sys., Inc.*, 2010 WL 1251445, at *2 (N.D. Ill. Mar. 24, 2010) ("if the plaintiff could simply add new defendants to avoid *Colorado River*, that doctrine would lose much of its force"). Under the present circumstances—where Ronald Weiss's liability in the federal suit is derivative of the liability of Weiss, a co-defendant in the federal suit and a party in the state court suit, and also where Ronald Weiss's presence in the federal suit and absence from the state court suit is entirely Freed's doing—Ronald Weiss's absence from the state suit does not defeat parallelism.

The issues being litigated in the two suits are "substantially the same" as well. *Tyrer*, 456 F.3d at 752. In the federal suit, Freed alleges that Weiss, assisted by Ronald Weiss, converted the LLC's funds to his personal use without authorization and wrongfully excluded Freed from control of the LLC. The state court counterclaims are mirror images of Freed's federal claims: in state court, Freed argues that Weiss concocted a false ground for forcing him out of the LLC in March 2011 and that Freed disassociated only as of August 2012, while Weiss and the LLC claim that Freed voluntarily dissociated in March 2011 or shortly thereafter. Doc. 41-1 at 9; Doc. 83-5 (12 C 1477) at ¶¶ 8-10; Doc. 98-1 (12 C 1477) at 4-6. Both cases turn on whether Freed dissociated as of March 2011 or August 2012 or at some intermediate point, and both thus "will be resolved largely by reference to the same evidence." *Tyrer*, 456 F.3d at 752-53.

Given the foregoing, the state and federal suits are parallel for purposes of *Colorado River*. In arguing to the contrary, Freed contends that his claim seeking to force the LLC to buy his distributional interest is before only the federal court. It is true that Freed did not present that particular request for relief in state court, but recall that suits need not be identical to be "parallel" for *Colorado River* purposes so long as they present "substantially" the same issues. As explained above, the issues are substantially the same. Moreover, although Freed did not ask the state court to require the LLC buy his distributional interest, the state court counterclaims do ask the state court for a "judicial determination that [the LLC] is dissolved and a distribution of its assets," Doc. 41-1 at 10. And Freed's dissolution request in federal court turns on the same issue as Weiss's and the LLC's mirror-image request in state court: whether Freed dissociated in March 2011, as Weiss contends, or in August 2012, as Freed contends, or at some intermediate point. Given this, Freed does not and could not explain how this court could award him the proper distributional interest once the state court decides how the LLC's assets should be

distributed. *See Lumen Constr., Inc.*, 780 F.2d at 695 (a court considering a *Colorado River* motion should "look not for formal symmetry between the two actions, but for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case").

Freed's arguments against abstention rest in large part on his assertions about Illinois state court procedure. He argues that his alleged dissociation from the LLC in August 2012 mooted the state court counterclaims. Doc. 30 at 16-21. Yet as the parties reported at a status hearing on June 6, 2013, that very issue is pending in state court, where Freed's motion to moot the counterclaims has been submitted for decision. Freed also argues at length that 805 ILCS 180/35-60(d) renders improper Weiss's and the LLC's counterclaims to the extent they seek dissolution of the LLC and distribution of its assets; Freed submits that only the disassociated member can seek dissolution and distribution. Doc. 106 (12 C 1477). But as the parties reported at the June 6 status hearing, the motion to set the trial is pending in state court and will be heard by Judge Kathleen Pantle, the judge presiding over the state court suit, if Freed's motion to moot the counterclaims is denied. This means that the state court is set to resolve Freed's argument regarding the propriety Weiss's and the LLC's request for dissolution and distribution.

Freed's submissions regarding the possible mootness and procedural propriety of the state court counterclaims miss the point of a *Colorado River* motion, which is not to decide who has the better case, but merely to decide which court should decide. This court should not and will not pass on the merits of the state law issues now pending in state court. If the state court holds that Weiss's and the LLC's counterclaims are moot, or if it holds that 805 ILCS 180/35-60(d) preclude Weiss and the LLC from pursuing their dissolution and distribution claims, then the parallelism that now exists likely will disappear and *Colorado River* likely will no longer

apply.  Until that happens, the issues and parties in the state case are substantially the same as the issues and parties in the federal case, satisfying the first *Colorado River* requirement.

### B.     Case 12 C 1477: *Freed v. JPMorgan Chase Bank, N.A.*

In Case 12 C 1477, as in Case 12 C 6720, Freed alleges that he and Weiss were the two members and managers of the LLC.  Doc. 42 at ¶¶ 2, 15, 16, 19.  Allegedly—a qualification that applies to the following recitation of facts as well but that will not be repeated—Weiss and Saltzman concocted a plot to eliminate Freed from control of the LLC and to divest him of the portion of the LLC's funds to which the Partnership Agreement entitled him.  *Id*. at ¶¶ 13, 29. Weiss and Saltzman did this by opening bank accounts with Chase while falsely representing to Chase that Weiss was the LLC's sole member and manager and that he therefore did not need anyone else's consent to move the funds.  *Id*. at ¶¶ 30-31, 33-34, 36-39, 41-43, 45.  Chase could have investigated Weiss's assertions and seen that they were false, but it did not do so.  *Id*. at ¶¶ 32, 34-35, 37, 40, 44, 46-47.

Weiss took his scheme to the next stage in March 2011.  In response to Freed's withdrawal of some funds from the LLC's accounts, Weiss asserted that Freed had "voluntarily withdrawn" from the LLC and locked Freed out of the LLC's property, computer systems, and bank accounts.  *Id*. at ¶ 53.  Weiss also transferred LLC funds to which Freed was entitled under the Partnership Agreement, including loan repayments and profit distributions, into the Chase accounts set up and controlled by him and Saltzman.  *Id*. at ¶ 54.

In November 2011, after learning that the funds had been transferred to the Chase accounts, Freed delivered to Chase a written demand that it freeze the accounts immediately.  *Id*. at ¶ 56; Doc. 42-7.  The letter provided Chase with a copy of the Partnership Agreement, informed Chase that Freed was a member of the LLC and that Weiss lacked authority to

unilaterally transfer or use the LLC's funds, and demanded that Chase freeze all funds held in the LLC's accounts. Doc. 42-7. Instead of complying, Chase (acting through an employee) contacted Weiss, alerted him to Freed's freeze demand, advised Weiss that the accounts likely would be frozen in response to the demand, encouraged Weiss to move the funds out of the accounts before they could be frozen, and aided him in doing so by helping him to obtain a $750,000 cashier's check and to move that money from Chase to another bank, Northern Trust. Doc. 42 at ¶¶ 3, 57-58, 67-68. Weeks later, the same Chase employee helped Weiss arrange to move other funds, which were then about to be deposited into the Chase accounts, to another bank. *Id*. at ¶ 59.

At the time Chase took these actions, it was aware of the Partnership Agreement's terms and of Weiss's plot to take control of the LLC's funds, including money owed to Freed to repay his loans to the LLC, in violation of the Agreement. *Id*. at ¶¶ 61, 64-66, 74. Without Chase's assistance, Weiss would have been unable to misappropriate the funds after Freed delivered his freeze demand. *Id*. at ¶¶ 69-71. As of late 2011, when Weiss improperly transferred the funds out of the Chase accounts, Freed was owed at least $500,000 in repayments for loans he had made to the LLC, as well as millions of dollars in profit distributions. *Id*. at ¶¶ 72-73.

In his second amended complaint, Freed claims that Chase committed tortious interference with contract (the Partnership Agreement) when it encouraged and assisted Weiss to remove the funds from the Chase accounts after receiving Freed's freeze demand. *Id*. at ¶ 75. Freed also claims that Chase aided and abetted Weiss's breach of fiduciary duties that he owed to Freed by virtue of their positions as members and managers of the LLC. *Id*. at ¶¶ 77-81. Both of Freed's claims against Chase require him to prove that Weiss committed underlying wrongs: breach of the Partnership Agreement and breach of fiduciary duty. *See Echo, Inc. v. Timberland*

*Machs. & Irrigation, Inc.*, 661 F.3d 959, 968 (7th Cir. 2011) (noting that the elements of a tortious interference with contract claim under Illinois law include the existence of a contract between the plaintiff and a third party and a breach by the third party that was induced by the defendant); *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) ("Under Illinois law, to state a claim for aiding and abetting, one must allege (1) the party whom the defendant aids performed a wrongful act causing an injury ….").

As mentioned above, Chase filed a third-party complaint against Weiss, Saltzman, and the LLC. Doc. 75 at 24-28. The third-party complaint repeats the allegations of wrongdoing against Weiss and Saltzman from Freed's second amended complaint. It further claims that "[t]o the extent that [Chase] is found liable to Freed in connection with the claims Freed asserts against [Chase] or [Chase] otherwise incurs or sustains any damages, [Chase] is entitled to contribution and/or indemnity from the LLC, Weiss, and/or Saltzman, jointly and severally, based upon the conduct alleged in the [second amended complaint]." *Id*. at 24-25. To support the contribution claim, Chase states that "[t]he Joint Tortfeasor Contribution Act … provides … that 'where two or more persons are subject to liability in tort arising out of the same injury to person or property … there is a right of contribution among them, even though judgment has not been entered against any or all of them.'" *Id*. at 26 (quoting 740 ILCS 100/2(a)). To support the indemnity claim, Chase states that the "Account Rules and Regulations [that governed its depository relationship with the LLC] provide that [Chase] shall be relieved of any and all liability for acting upon the instructions of the LLC and/or the signatories on the LLC's account and that the LLC shall indemnify and hold [Chase] harmless for all such actions." *Id*. at 27. Chase concludes that "[a]s Freed's claims arise out of transactions and conduct undertaken pursuant to the instructions of the signatories of the Accounts, Weiss and/or Saltzman, as

representatives of the LLC, the LLC must indemnify and hold [Chase] harmless from any and all such liability, attorneys' fees, costs, and expenses pursuant to the Account Rules and Regulations." *Id*. at 28.

The state and federal proceedings involve "substantially the same parties." In the federal suit, Freed sues Chase and Chase sues Weiss, Saltzman, and the LLC. In the state suit, Chase is not a party, Freed had sued Weiss and Saltzman but dismissed his claims, and Weiss and the LLC sue Freed. The absence of Saltzman from the state case in immaterial for the reasons given above regarding Ronald Weiss—the claims against Saltzman are derivative of the claims against Weiss. *See Lumen Constr., Inc.*, 780 F.2d at 695; *Pieleanu*, 2010 WL 1251445, at *2.

As for the absence of Chase from the state court suit, that distinction between the state case and Case 12 C 1477 is entirely attributable to Freed. It was Freed who decided to sue Chase in a separate suit rather than adding Chase as a defendant in his state court suit against Weiss. Indeed, Freed brought yet another suit in which he sued Northern Trust, a second bank that Freed believes was in cahoots with Weiss. Doc. 32-4 (12 C 1477). Judge Pantle has repeatedly remarked, with ample justification, that Freed is attempting to avoid her courtroom, and her adverse rulings, by filing several suits rather than combining all of his related claims before her in the state court *Freed v. Weiss* lawsuit. Doc. 27-1 (12 C 6720) at 3 ("I am concerned about whether or not Mr. Freed is abusing the process here by filing other lawsuits that are actually related to this lawsuit, that belong with this lawsuit, and what he is doing is attempting to undermine and undercut this court's authority in the case that's before the court by getting rulings from other judges. … I'm very concerned about an abuse of process here and a manipulation of the system"); Doc. 27-2 (12 C 6720) at 4-5 ("You know, it's just a shell game … it appears now to be a game that … Mr. Freed is trying to play to get away from me. So, you

know, we'll file suit against all sorts of unrelated parties and make them sound like they're independent lawsuits and, you know, that way we can get a judge other than Judge Pantle. We'll go to federal court to get away from her … this is just outrageous …"); Doc. 27-12 (12 C 6720) at 15 (sanctioning Freed pursuant to Illinois Supreme Court Rule 137 for filing a case that "was not well-grounded in law" against Northern Trust).

Freed's choice to sue Chase in a separate lawsuit enabled Chase to remove that suit, for had Freed joined Chase as a defendant in the *Freed v. Weiss* state court suit, removal would have been prohibited by 28 U.S.C. § 1441(b)(2) because diversity provides the only basis for federal jurisdiction and Weiss is a citizen of Illinois, the State in which the state court action was brought. *See* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."); *Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377, 378 (7th Cir. 2000) (discussing the "forum defendant rule"). And even if the state court *Freed v. Weiss* suit had been removable, Freed could have ensured that all defendants would have stayed together whether they removed or not by suing them in a single suit rather than bringing separate suits. In short, Freed preferred to bring a barrage of separate state court suits, and that is why his claims against Chase—which ultimately depend on the facts and law in the state court case, because if Freed disassociated in March 2011, then Weiss did not violate his contractual and fiduciary obligations to Freed, and if Weiss did not violate those obligations, then Chase is not liable to Freed—will be resolved after the state court resolves his disputes with Weiss rather than as part of the same case.

As the foregoing discussion makes clear, the issues being litigated in Case 12 C 1477 are substantially similar to the issues being litigated in state court. Freed's claims against Chase in

federal court depend on his allegations that Weiss, assisted by Saltzman and Ronald Weiss, converted the LLC's funds to his personal use without authorization and wrongfully excluded Freed from control of the LLC. If Weiss did not breach contractual and fiduciary duties owed to Freed, than Chase cannot be liable for having induced or aided and abetted a breach. *See Echo, Inc.*, 661 F.3d at 968; *Hefferman*, 467 F.3d at 601. The state court counterclaims will resolve the same issue from the opposite direction by determining whether Freed in fact voluntarily dissociated from the LLC in March 2011, in which case Weiss did not breach either the Partnership Agreement or his fiduciary duties by taking steps to ensure Freed's exclusion from the LLC. Doc. 41-1 (12 C 6720) at 9. The state court's resolution of that in Weiss's favor would necessarily entail rejection of Freed's position, essential to his claims against Chase, that he did not dissociate in March 2001 and that Weiss falsely asserted that Freed had dissociated as a way of taking the LLC and its assets for himself.

In arguing that the suits are not parallel, Freed says that "the State Action will not dispose of Freed's claims against Chase." Doc. 83 at 4. This contention fails to recognize that, as noted above, Freed bears primary if not sole responsibility for Chase not having been made part of the state court *Freed v. Weiss* suit. The contention also misunderstands both the elements of Freed's claims against Chase—which *do* turn on the issues being litigated in the state action—and the principles of *res judicata*, which, if Freed loses in state court based on a finding that he voluntarily dissociated in March 2011, almost certainly would provide Chase with an immediate victory in this case. *See In re Owens*, 532 N.E.2d 248, 251 (Ill. 1988) ("Defensive use of collateral estoppel precludes a plaintiff from relitigating issues by switching adversaries, and thus gives a plaintiff an incentive to try and join all defendants in the first action."); *Ill. State Chamber of Commerce v. Pollution Control Bd.*, 398 N.E.2d 9, 11-12 (Ill. 1979) (excising the

mutuality requirement from the Illinois collateral estoppel doctrine); *see also Havoco of Am., Ltd. v. Freeman, Atkins & Coleman, Ltd.*, 58 F.3d 303, 308 n.9 (7th Cir. 1995) (discussing the Illinois defensive nonmutual collateral estoppel doctrine). True, if Freed prevails in state court, he likely will be unable to use that victory offensively against Chase due to a lack of privity between Chase, on the one hand, and Weiss and the LLC, on the other. *See Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636 N.E.2d 503, 510 (Ill. 1994) ("Three factors are necessary for the application of collateral estoppel," including "(3) the party against whom the estoppel is asserted must be a party, or in privity with a party, to the prior adjudication."); *Havoco of Am., Ltd.*, 58 F.3d at 308 n.9 (same). But parallelism under *Colorado River* requires only that there be "a substantial likelihood," not a certainty, "that the [state court] litigation will dispose of all claims presented in the federal case." *AAR Int'l, Inc.*, 250 F.3d at 518 (internal quotation marks omitted). Because that standard is met here, Case 12 C 1477 and the state case are parallel.

## II.     The *Colorado River* Factors

The second step in the *Colorado River* analysis requires examining and balancing the following ten non-exclusive factors:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Tyrer*, 456 F.3d at 754 (quoting *Caminiti*, 962 F.2d at 701). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required."

*Colorado River*, 424 U.S. at 818-19; *see also Tyrer*, 456 F.3d at 754. The court will address

each factor in turn, making distinctions between the two federal suits where appropriate.

    *1. Whether the state has assumed jurisdiction over property*. Defendants contend that

the state court "assumed jurisdiction of the [LLC's] bank accounts" by "preventing Freed from

putting holds on the bank accounts" and by "enjoin[ing] Freed from interfering with accounts

receivable and … enter[ing] orders governing [the LLC's] property, including its computer

system, furniture, office location and client files." Doc. 27 (12 C 6720) at 20 (brackets and

internal quotation marks omitted); *see also* Doc. 79 (12 C 1477) at 9. In response, Freed asserts

only that "the state court has not 'assumed jurisdiction over property,' which weighs against

abstention from this Court's exercise of jurisdiction." Doc. 30 (12 C 6720) at 21. Freed's failure

to rebut or even to address Defendants' specific arguments is a forfeiture, and so the court will

accept that the state court has assumed jurisdiction over property related to this lawsuit. *See*

*Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an

argument—as the Bontes have done here—results in waiver."); *Cincinnati Ins. Co. v. E. Atl. Ins.*

*Co.*, 260 F.3d 742, 747 (7th Cir. 2001) (a party's failure to respond to a non-frivolous argument

"operates as a waiver").

    *2. The inconvenience of the federal forum*. Because the federal and state lawsuits are

pending in courts located in Chicago, the federal forum is not inconvenient and the second factor

weighs against abstention.

    *3. The desirability of avoiding piecemeal litigation*. "Piecemeal litigation occurs when

different tribunals consider the same issue, thereby duplicating efforts and possibly reaching

different results." *Day*, 862 F.2d at 659. "Dual proceedings could involve what we have called a

'grand waste of efforts by both the court and parties in litigating the same issues regarding the

same contract in two forums at once.'" *Ibid.* (quoting *Microsoftware Computer Sys. v. Ontel Corp.*, 686 F.2d 531, 538 (7th Cir. 1982)).  Here, because the federal and state actions involve substantially the same parties and legal issues, and because both cases turn on the veracity of Freed's assertions regarding Weiss's alleged wrongdoing and also upon when Freed disassociated from the LLC, proceeding simultaneously in both forums would ensure "duplicative and wasteful litigation with the potential of inconsistent resolutions of the issue." *Caminiti*, 962 F.2d at 701.

Simultaneous proceedings also would create incentives for one or the other party to attempt to delay proceedings in one forum should the other forum appear more favorable.  *See ibid.*; *LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1560 (7th Cir. 1989).  Indeed, Freed's complaint in Case 12 C 6720 essentially concedes that this was his aim in filing that case in federal court despite the pendency of the state court suit: "Victimized by Weiss's continued pilfering, and denied any interim relief in the [Cook County] Circuit Court, Freed expressly dissociated from the LLC on August 21, 2012.  Freed then filed [Case 12 C 6720], over which this Court now had jurisdiction based on diversity of citizenship."  Doc. 1 (12 C 6720) at ¶ 17; *see also id.* at ¶¶ 7, 10 (explaining that Freed disassociated from the LLC to make himself diverse from the LLC, which permitted him to bring state law claims against the LLC in federal court).  In essence, Freed is saying, "I was losing badly in state court, so I did what it took to get a parallel case into federal court."  The third factor strongly favors abstention.

Freed responds that "the claims in the state court were rendered moot when Freed dissociated so there is no credible concern over 'piecemeal litigation.'"  Doc. 30 (12 C 6720) at 21.  As indicated above, the mootness issue is before the state court.  If the state court agrees

with Freed on mootness and dismisses the state court counterclaims, the predicate for *Colorado River* abstention likely will disappear.

4. *The order in which jurisdiction was obtained by the concurrent forums.* This factor favors abstention, as Freed filed the state court *Freed v. Weiss* suit in December 2011, Case 12 C 1477 in February 2012, and Case 12 C 6720 in August 2012. *See Lumen Constr., Inc.*, 780 F.2d at 697 (holding that this factor favored abstention where the state case was filed five months before the federal case).

5. *The source of governing law, state or federal.* The source of the governing law in the federal cases is state law, which favors abstention. *See Day*, 862 F.2d at 660 ("a state court's expertise in applying its own law favors a *Colorado River* stay").

6. *The adequacy of state court action to protect the federal plaintiff's rights.* The state court is eminently competent to protect Freed's rights, which turn on state law. Freed argues that this conclusion ignores the principal goal of federal court diversity jurisdiction, "to protect non-residents who seek redress under state law from the *possible* prejudice they might encounter in local courts," and asserts that "Freed, a citizen of Florida …, chose to commence these proceedings in [federal court] to avoid any prejudice." Doc. 30 (12 C 6720) at 22. Whatever weight could be given to the abstract possibility of an Illinois state court's being prejudiced against a Florida citizen, the possibility is extraordinarily remote here. Freed's assertion that he fears prejudice as a Floridian is fatally undermined by the fact that Freed himself—a savvy and experienced litigation attorney—elected the state forum to bring Case 12 C 1477 against Chase, the state court *Freed v. Weiss* suit, and his related case against The Northern Trust. Freed even identified himself in the December 2011 *Freed v. Weiss* state court complaint as "a resident of

the state of Florida," Doc. 1-1 (12 C 1477) at 13, showing that he had no fear that the state court would exhibit prejudice towards someone claiming to be a Florida resident.

At the risk of overkill, it bears mention that Freed retains substantial ties to Illinois. In a state court collection action brought against him by his former lawyers, Freed filed a *pro se* pleading and served a *pro se* discovery response in July 2012 listing his address as Highland Park, Illinois. Docs. 17-1, 17-2 (Doc. 12 C 6720). And in his original complaint against Chase, the one filed in state court, Freed identified himself as a lawyer licensed to practice law in Illinois. Doc. 1-1 (12 C 1477) at ¶ 1 (alleging that Freed "is a lawyer licensed by the States of Illinois and California to practice law").

In the end, having chosen the Circuit Court of Cook County, Illinois, as the forum for all but one of his suits (Case 12 C 6720), Freed cannot now be heard to accuse that court of prejudice against him due to his asserted Florida citizenship. If the state court views Freed in a negative light, and it most certainly does, it is due to Freed's behavior and tactics in state court, not to his state of citizenship. The sixth factor favors abstention.

*7. The relative progress of state and federal proceedings.* In Case 12 C 6720, there was an "absence of any proceedings in the [federal] District court, other than the filing of the complaint [and a motion for jurisdictional discovery, Doc. 17], prior to the motion to [abstain]." *Colorado River*, 424 U.S. at 820. By contrast, Judge Pantle has issued numerous rulings, several of which have been appealed to and upheld by the Appellate Court of Illinois. Docs. 30-5, 30-6, 30-7, 30-8, 41-1 (12 C 6720). Freed counters that the state court case "has been hopelessly stalled for several months" and that "any litigation before the state court effectively ended months ago." Doc. 30 (12 C 6720) at 23. But Freed acknowledges that "limited discovery" has commenced in state court, Doc. 83 (12 C 1477) at 14-15, and he does not and could not deny that

21

the state court has expended substantially greater judicial resources on this matter than has this court.

In Case 12 C 1477, this court has granted one motion to dismiss and denied another. But there has been no progress beyond Chase's answering the second amended complaint and bringing in Weiss, Saltzman, and the LLC as third-party defendants. True, there are no claims against Chase in the state court action, though again that is because Freed chose to file a separate suit against Chase rather than join Chase in the state court *Freed v. Weiss* suit. However, because Freed's claims against Chase depend on the success of his claims against Weiss, and because Weiss's state court counterclaims would, if successful, almost certainly deal a fatal blow to Freed's claims against Weiss and thus against Chase, the progress in the state court suit must be considered in weighing the relative progress of the state court suit and Case 12 C 1477. It follows that the state court suit has progressed substantially further than Case 12 C 1477, and therefore that the seventh factor favors abstention.

8. *The presence or absence of concurrent jurisdiction.* All of Freed's claims in federal court arise under Illinois law, and Defendants would be susceptible to suit in Illinois court, so the eighth factor favors abstention. *Compare Caminiti*, 962 F.2d at 702-03 (holding that the state court's lack of jurisdiction to hear a federal claim weighed against abstention). Freed responds by pointing to 805 ILCS 180/35-60(d), which states: "The jurisdiction of the court in which the proceeding [to force the LLC to purchase a member's distributional interest] is commenced under this subsection (d) is *plenary and exclusive*" (emphasis added). Doc. 30 (12 C 6720) at 24. But again, Freed's argument rests on the submission that Illinois law precludes Weiss and the LLC from seeking dissolution of the LLC and distribution of its assets in the state court case, a submission on which the state court soon will pass. If the state court agrees with Freed, then

Freed may move this court to lift the abstention order in light of the changed circumstances in state court.

9. *The availability of removal*. This factor recognizes a policy against a federal court's hearing claims that are closely related to non-removable state proceedings. *See Day*, 862 F.2d at 659-60. As noted above, the state court suit was non-removable due to 28 U.S.C. § 1441(b)(2). Because the federal suits are bound up with the claims in the non-removable state proceeding, the ninth factor favors abstention.

10. *The vexatious or contrived nature of the federal claims*. There is no need to comment adversely on Freed's motives to conclude that, because his federal court claims closely track the state court claims that he brought and that have been brought against him, the federal suit is "vexatious" and "contrived" within the meaning of *Colorado River*. *See Interstate Material Corp.*, 847 F.2d at 1289 ("[T]he federal suit could be considered both vexatious and contrived. Interstate filed both suits within seven months of each other seeking substantially the same relief from substantially the same parties. Without presuming Interstate's motives, we see no reason why all claims and all parties could not have been, and still could not be, part of one suit."). That said there is overwhelming evidence that Freed behaved vexatiously by bringing Case 12 C 6720 in federal court and Case 12 C 1477 as a separate suit in state court. As noted above, Judge Pantle has remarked on several occasions that Freed has abused the judicial process by bringing a series of suits in an effort to circumvent unfavorable rulings by her.

Judge Pantle's rulings have been *extremely* unfavorable, as the following examples show. Doc. 27-10 (12 C 6720) at 7 (Judge Pantle's April 2012 order granting Weiss's motion to enjoin Freed from filing or pursuing other related suits in state court, and noting that Freed "has specifically threatened to sue Tucker [Weiss's attorney] in *federal* court probably because the

appellate court has ruled that an Illinois trial court lacks the power to enjoin a party from filing suit in federal court"); Doc. 18-1 (12 C 1477) at 57 (Order from the Appellate Court of Illinois denying Freed's interlocutory appeal of Judge Pantle's April 2012 injunction); Doc. 18-1 (12 C 1477) at 72 (Judge Pantle's May 2012 order granting Northern Trust's motion to dismiss Freed's suit against it); Doc. 27-3 (12 C 6720) at 5 (Judge Pantle's September 2012 order denying Freed's motion to stay the state court proceeding and to compel arbitration, and granting the LLC's motion to enjoin arbitration); Doc. 27-11 (12 C 6720) (Judge Pantle's October 2012 order denying Freed's motion to continue a hearing or to excuse his attendance, and stating "Freed is ordered to appear on October 4, 2012. His failure to appear will result in the issuance of a bench warrant for his arrest."); Doc. 27-12 (12 C 6720) (Judge Pantle's November 2012 order granting in part a motion for sanctions filed against Freed by Northern Trust and the LLC on the ground that Freed's suit against Northern Trust "was not well-grounded in law"). Freed also is in the midst of contempt proceedings before Judge Pantle for various alleged instances of misconduct in connection with the state court case. Doc. 31 (12 C 6720) at 13. It is obvious as obvious can be that Freed brought a separate state court suit against Chase (12 C 1477), and then a separate federal suit against Weiss, Ronald Weiss, and the LLC (12 C 6720), in an effort to evade Judge Pantle's courtroom and her stewardship of the litigation concerning Freed's disputes with Weiss, the LLC, and the others alleged to be in league with Weiss and the LLC. The tenth factor accordingly weighs heavily in favor of abstention.

In sum, nine of the ten *Colorado River* factors—particularly the third, fourth, seventh, eighth, and tenth factors—favor abstention and provide the "exceptional circumstances" necessary to abstain under that doctrine.

## Conclusion

Under the test set forth by the Seventh Circuit, *Colorado River* abstention is the proper course in both federal cases. The only remaining question is whether the federal suits should be dismissed or stayed. The Seventh Circuit routinely holds that *Colorado River* should be implemented through a stay, not dismissal. *See Selmon v. Portsmouth Drive Condo. Ass'n*, 89 F.3d 406, 409-10 (7th Cir. 1996); *Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1308 (7th Cir. 1988); *Lumen Constr., Inc.*, 780 F.2d at 697-98. Accordingly, the federal suits are stayed pending resolution of the state court litigation. When the state court litigation terminates, any party may move this court to lift the stay and proceed with the federal cases in a manner consistent with the state court's rulings and any applicable principles of *res judicata*. *See Rogers v. Desiderio*, 58 F.3d 299, 302 (7th Cir. 1995) ("It is sensible to stay proceedings until an earlier-filed state case has reached a conclusion, and then (but only then) to dismiss the suit outright on grounds of claim preclusion."). Because the court has abstained under *Colorado River*, it unnecessary to address the alternative argument made in Case 12 C 6720 that abstention should be ordered under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

June 13, 2013

United States District Judge